May it please the Court. Ordinarily, resisting the enforceability of an arbitration provision in a federal court is a dangerous proposition, but I think what we have here is at least one narrow context where we find that an arbitration provision is not enforceable. Specifically, that context is a maritime insurance policy before the District Court, sitting in a state which has a state law prohibiting the appearance of arbitration provisions in insurance policies. Galileo submits that the District Court in this case erred, frankly, by asking the wrong question. The District Court engaged in what Galileo submits was an unnecessary choice of law analysis when, in fact, federal maritime law applies. All parties agree that federal maritime law applies, and federal maritime law tells you you don't have to engage in a choice of law analysis. Instead, you should look to the public policy of the forum state here in Montana. And because Montana has a strong public policy against arbitration provisions appearing in insurance contracts. But that's because the, with respect to insurance, maritime insurance policies in general, there's no federal maritime law. And therefore, we're going to go look at the state, as the old opinion says. But here we have the Federal Arbitration Act, which specifically deals with maritime transactions. That's true, but the Federal Arbitration Act was passed in 1925. Twenty years later, we have the McCarran-Ferguson Act, which operates to save state insurance regulations from what would otherwise be federal. Well, yes, if state law applies. But I do think you're taking it one step, you're jumping one step too soon. Because if there is, in fact, federal maritime law with regard to the enforceability of arbitration clauses in maritime insurance policies, then you don't go to the state. But, so in 1955, 30 years after the Federal Arbitration Act was passed, we have the Supreme Court saying in the Wilburn Boat Case, that we leave the regulation of maritime insurance to the state. Right, but it wasn't dealing, in instances where there is no maritime law, because their premise was that this is all, that there is no maritime or federal maritime or out-of-country law about this. But in this one particular area, there is. I don't think that's true, Your Honor. And I think that, you know, the Supreme Court revisits the issue in 1959 in the Romero case, and says, even in the context of arbitration, that we look to the states for federal law. But at that point, we weren't applying the Federal Arbitration Act to state law, right? And now we are. So I don't see, I just think maybe you're jumping off one step too soon. Well, Your Honor, I think that if you look at the Bremen v. Zapata case, that tells you when to enforce things like arbitration provisions and when not to, in the context of maritime, all maritime contracts, not just maritime insurance contracts, but all maritime contracts. And in that, in the Bremen v. Zapata case in 1972, the Supreme Court says that you should not enforce clauses like arbitration clauses, form selection clauses, things like that. You should not enforce those clauses if it violates the strong public policy of a form state. So this is well after the Federal Arbitration Act, well after the McCarran-Ferguson Act, well after Wilbur and Bode and Romero. We still see the Supreme Court saying, you look to the public policy of the form state, and here that form state is Montana. Here the insurers sort of marginally dispute that Montana has this public policy. I don't really think that's a credible dispute. I think the statute is clear, and if there were any doubt, there's Montana Supreme Court decisions saying that at least in Montana, under Montana's public policy, there is, arbitration provisions are simply not permitted in insurance contracts. Now, obviously under the Supremacy Clause, a state's laws would ordinarily be preempted by Federal law, and there's certainly a strong Federal policy in favor of arbitration agreements. So outside of the context of insurance, I would submit that Montana's public policy would be preempted by the Federal public policy. However, in the context of insurance, the American McCarran-Ferguson Act operates to save Montana's public policy from preemption, and what you're left with is, Galileo would submit, Remen v. Zavada tells you, look at the public policy of the form state. Here that's Montana. Montana has a public policy against enforcement of arbitration provisions in insurance contracts. That's not preempted, and it is left to be, instead of being preempted, it's saved by McCarran-Ferguson, and operates in this case to prohibit the enforceability of the insurance contract, the arbitration provision of the insurance policy. And I think the Court can take some comfort in that it's not just Galileo LLC telling you to reach that decision, but there's actually been four other circuit courts to have evaluated the issue of whether a state's probe provision But not in the maritime context. Is there any case which deals in the maritime context? No. But under the McCarran-Ferguson Act, insurance is insurance, and maritime insurance is not treated specially or differently. So I don't think there's any reason to treat, to reach a different result in the maritime context. Unless the maritime arbitration clauses are treated differently. I would submit that, yes, that's true, because under maritime law it does have its own special considerations for when foreign selection clauses, arbitration clauses, things like that are not to be enforced. The background rule is that they're generally enforced. There are limited circumstances under which they're not enforced. That's what the Supreme Court tells us in the Bremen v. Zapata case, but one of those So the fact that the Federal Arbitration Act specifically addresses maritime transactions doesn't matter? No, because the Federal Arbitration Act That's why you say the McCarran Act trumps it, even though it would have to trump it with regard to state law, and this isn't state law. We all agree that this is maritime law incorporating state law to fill gaps. So if there's no gap, why are we going to the state law? I think that there, because the Supreme Court tells you to go to the state law. The Supreme Court tells you to In a situation where there's no federal law, but here there is federal law. I think that if you were looking only at the Wilburn Boat case, for example, you would say that you look to state law to fill in gaps in the federal law. But, however, if you look at the Bremen v. Zapata case, you're looking at the state law for more than just filling in the gaps. You're looking at the state law to determine what is the public policy of the forum state. And in this case, the public policy of the forum state is against the enforcement of arbitration provisions in the context of insurance. Okay. You mentioned, other than Wilburn, a second case thereafter, which you say was about arbitration. What case was that? The case is Romero v. International Terminal Operating Company. It's 358 U.S. 359 Oregon. And there, the Supreme Court was recognizing that state laws governing the specific performance of arbitration agreements have been accepted as rules of decision in Admiralty cases. Unless the Court has questions about Galileo's appeal, I'd like to turn to the insurer's cross appeal. First of all, you only reach the insurer's cross appeal if you reject Galileo's appeal. Obviously, if arbitration provisions are unenforceable in the maritime insurance contract, at least in the state of Montana, that ends both appeals. If you reject that, however, you have to turn to the question of what is the proper scope of the arbitration agreement and which claims are arbitrable and which are not. I think what's interesting about the insurer's appeal here is that, considering the arbitration provision of the insurance policy, which is the only arbitration provision that was relied on to institute the arbitration, that is the arbitration that was, in which Galileo's participation they sought to compel, that was the arbitration provision that was really before the district court at all stages until the last reply briefs of the insurers, the insurers are not now making any argument under the arbitration provision of the policy. It seems that they're effectively conceding that under the policy, which contains this arising under language, that's narrow, and only some of the claims should be arbitrable. The rest should not. Instead of engaging on the arbitration provision of the policy, the insurers are focusing on the arbitration provision of a separate and distinct document, the application for insurance. And I think that the district court properly recognized that that is not the arbitration that was before the court because that is not the arbitration that the insurers sought to compel. I think that if you look at the parties' briefs, you'll also see that Galileo points out that the insurance policy itself supersedes the application and defines what are the documents that govern the relationships between Galileo and the insurers, and the application is not among those documents. And there's no response from the insurers to this argument that the application, the provision of the application has been superseded. Also, there's, it would be difficult to enforce the provisions, the arbitration provisions of the application because the arbitration that has been commenced by the, in front of the federal, in front of the AAA and which is currently State at the moment is an arbitration involving three arbitrators. The arbitration provision of the policy specifies only one arbitrator. Again, just demonstrating that what was really at issue before the district court was the arbitration provision of the policy. I have a question, which is, assuming you're right about this, if you were, the district court then went on to decide which provisions were arbitrable under the policy. That issue is not before us. Is that right? It hasn't been certified. Which of the provisions under the policy are arbitrable and not arbitrable? I believe that the district court certified the issues in both its order finding the arbitration provision enforceable, on the one hand, and also certified the issues in its subsequent order constrained scope of the arbitration agreement. Well, if that's true, then I, it didn't seem, his conclusions as to what arose under seemed a little extreme. I mean, for example, why doesn't the good faith and fair dealing provision arise under the policy? Because the provisions like contract reformation and good faith and fair dealing are implied contract causes of action. So what? Still arise under the contract? No, they arise under implied provisions of the contract. That's the contract. But there's a Ninth Circuit precedent that says that those implied contract causes of action do not arise under the contract. Do you want to face your side? Stand right to me. Yes. I know there were cases that said that torts were not covered, but those aren't torts. That's correct. I believe, if you look at the case, it's Mediterranean Enterprises versus SsangYong. Right. And that concerned claims for quantum merit and conversion. Right. And those are not based on implied terms of the contract, but this is. I believe that there is, I'm having difficulty locating it at the moment, but perhaps I can locate it for you and identify for you. I don't have the issue. I didn't think we were supposed to figure out whether these counts 3 through 12 were covered by the arbitration provision or not. I thought that was the question, was whether the arbitrators themselves should decide that. It seemed to me that this issue was controlled, the question was whether our decision had been controlled at this point, right? The insurers would certainly argue that the arbitrators should make an initial determination on these questions of arbitrability. Yeah, but it's directly on point, because it involves the exact same kind of arbitration provision where you designate, is it the AAA, right? And we held there, at least with respect to sophisticated parties, that no, that meant you all agreed that the arbitrator would decide whether these accounts were covered or not. So I don't know why we're debating ourselves whether they're covered. It seems to me before we get to that question, we would need to resolve whether Brennan dictates the outcome here. And I guess I was inclined to think that it did, because your clients do seem sophisticated. I would offer two reasons why that is not the case. First, my clients are not sophisticated. There's no evidence in the record that my clients are sophisticated with respect to purchasing maritime insurance. That's not the standard. I think that it is. I mean, they have to be sophisticated in the transaction in which they're engaged. According to what case? According to the Brennan case. No, Brennan doesn't say that. Brennan says we're not deciding whether it applies to unsophisticated people. I'm just curious, are you aware of any circuit court authority that rises and falls on whether someone is sophisticated in this context? No, the Ninth Circuit has not addressed the issue. But every district court to address the issue has declined to extend Brennan to circumstances where at least one of the parties was unsophisticated or where there was disparity in the level of sophistication. My question is, are there any circuit courts that focus on the sophistication other than, the Ninth Circuit hasn't, as you agree. Do any other circuit courts make this distinction between sophisticated and unsophisticated? I am not aware of any at the moment, Your Honor. Did you have an argument, which I'm not sure I fully understood, that there was a lack of clarity about what provisions of the AAA applied that maybe this wasn't clear, even if substantively clear? Yes, Your Honor. And one of the other reasons why I would suggest that Brennan does not apply here is because even if you defer to the arbitrator, you still have to engage in what is referred to as this wholly groundless inquiry. And we would submit that it would. What's the wholly groundless inquiry? I thought that Brennan or the Supreme Court case used language like clear and unmistakable or something like that. No. It's actually a case from the Federal Circuit interpreting Ninth Circuit law, and the Federal Circuit interpreting Ninth Circuit law suggests that the court, that a district court has to engage in this wholly groundless inquiry, which means you do at least a loose evaluation of the viability of the argument that the claim is arbitrable, and if the argument is deemed to be wholly groundless, then you don't submit it to the arbitrator. We have argued in our briefs that the contention that ten of these claims are not or are, in fact, within the scope of this narrow arbitration clause is wholly groundless, and there's really been no response by the insurers from that. And to address your point, Judge Berzon, it is true that there are dozens and dozens of different types of AAA arbitration rules that were available from the AAA's website at the time this contract was entered into, and we submit that that demonstrates that there's a lack of clarity. And some of them don't have this provision about the arbitrator having the authority? There's no evidence in the record of what those provisions might be. I don't think this arbitration provision differs in that respect from the one in Brennan, does it? In Brennan, they just incorporate the AAA rule, does not it? I think that's true, but it's not clear that at the time the Brennan decision was decided how many different types of AAA arbitration rules. It's not that long ago. Brennan's not that long ago. No, you're right. It's not that long ago in time. Okay, you're out of time. Thank you very much. We will give you a minute to wrap up. Thank you. Thank you. May it please the Court. Good morning, Your Honors. Brian Eisenhower, Hill Rifkin's LLP for the Cross Appellants, AGCS Marine Insurance Company, Liberty Mutual Insurance Company, and Taurus National Insurance Company. I'd like to try to address a few of the points that were just raised a few moments ago, and I'll start with the discussion of Romero, the 1959 Supreme Court case. What does Romero have to do with this? Your Honor, I think it has very little to do with this, and I know that it's been cited in I think both of the appellants' briefs. Romero made a passing reference in collecting cases to specific enforcement of arbitration agreements. That reference cites back to a 1924 case, so a decision that was issued a year before the Federal Arbitration Act came into effect. And so that is not an accurate reflection of the context. Where is that, by the way, in Romero? I've just been looking at Romero and I couldn't find it. Your Honor, I think I may have a pinpoint site if you just bear with me for a moment. Go ahead. It's not what Romero was about, particularly. In Romero, 358 U.S. 354, the pinpoint site's 373. I think it's actually a footnote, at least in the copy of the decision that I had for the citation, but to the extent that there's a reference to specific enforcement of arbitration agreements, that proposition cites back to a 1924 case, Red Cross Line versus Atlantic Fruit Company, also a Supreme Court case, but from 1924, a year before the Federal Arbitration Act came into effect. So I don't think that the Romero court's purpose in citing that example was to have a holding concerning the enforcement of state law on arbitration agreements. So I don't want the court to be misled by that. The next issue that I'd like to briefly address is Bremen. And I can say to Judge Owens, I just took a look, unfortunately, only this morning, and found that there was a case decided in the Ninth Circuit just a few weeks ago. That's the Cochran case. And in that case, I'll give you a site, Cochran versus Open Text Corp, number 15-16322. The Westlaw site is 2017 WL2790689, June 27, 2017. In that particular decision, the court ruled that the district court. Did you give this to your opposing counsel? No, as I mentioned, Your Honor, I only noticed it this morning when I was. Well, that's fine. I mean, you're supposed to give it to the opposing counsel and give us this objection, or give it to the clerk. I apologize, Your Honor. Because he's being sent back. Anyway, go ahead. So in this particular Ninth Circuit decision, the district court was said to have correctly determined that the parties had agreed to arbitrate arbitrability via the incorporation in the employment agreement of the AAA rules, and cites back to Bremen. So in this particular instance, this was an employment contract. The individual who brought suit was named Kevin Cochran. He was apparently the chief marketing officer, and his employment terminated, and there was a dispute that arose out of that. So I can't say that the Ninth Circuit has addressed the question of what makes a person sophisticated versus unsophisticated or whether there's a distinction on the issue of arbitrability. However, I can look to this as an example and say that we're talking about an individual in this case, as opposed to the Galilea case we're discussing, in which we have a company. Exceedingly unrealistic, though, isn't it? Well, that's a mem. I'm sorry to interrupt. That's a mem dispel, correct? It's not a published decision? I believe you're correct. Okay, so that makes a big difference. I'm sorry, I didn't mean to. Don't even bother wasting your time bringing that up. That makes no sense. It's not binding. I mean, I guess you're saying that if there's some persuasive reasoning in there, but don't cite it as though it's some binding authority on us that your opponent has a chance to look at it. I apologize. It wasn't intended to. That should be the first thing out of your mouth if you're going to cite supplemental authorities, that it's unpublished, because we generally don't pay any attention, as far as precedent goes, to unpublished decisions. My apologies, Your Honor. I should have caught that this morning. My apologies. But essentially the assumption here is that before signing this agreement, while they were cruising around Panama, they were supposed to go onto the AAA website and read some unspecified set of rules, because we don't know which rules we're talking about. Is that right? And discover that this provision was in it. Your Honor, the appellant contends that the consumer rules apply. And as the district court noted, both the consumer rules that the Galileo Contents applies and the commercial rules that the insurers contend apply contain a provision that delegates the authority for questions of arbitrability to the arbitral tribunal. So under either one of the rules, sets of rules that are being discussed, the arbitrability issue is treated the same way. It's for the arbitrators to decide. So I don't know that there is any reason to diverge from Brennan on that point. Brennan, as Judge Wofford noted, did not involve a specific mention of which set of AAA rules applied. According to the AAA, if no particular set of rules is cited, then the commercial rules presumptively apply. So we contend that the commercial rules do apply here. Your Honor, Galileo LLC contends that there is something different about maritime insurance contracts that lead to the conclusion that arbitration provisions should not be enforced. There is something different about maritime insurance contracts. They're specifically covered by the FAA. I agree, Judge Berzani. I certainly do. And, of course, looking at maritime law more generally, it is, I believe, the only area of substantive law that's specifically cited in the Constitution in Article III, Section 2, Clause 1. There's an overarching policy of uniformity to ensure that, you know, when vessels call in different ports as they travel around the coast of our country, that the same law applies. Well, yes, but we know that Wilburn Boat and so on do send you back to state law for the most part because as incorporated into Federal maritime law, right? That's correct, Your Honor. In the holding from Wilburn, the teaching of Wilburn, is that if there is no established and entrenched maritime law principle, then you look to state law to fill the gaps, as Your Honor said. Here in this particular case, we have a dispute that really involves a navigational warranty in the policy. And we've cited a Federal case affirmed by the Eleventh Circuit in which the Court ruled that Federal law, not Florida state law, governed the issue of a navigational warranty in a policy. So we think this dispute, or at least the heart of this dispute, is governed by… You're not relying on the maritime transaction part of the FAA? Your Honor, it certainly does involve the maritime transaction part of the FAA at 9 U.S.C. 1. And also because the scope of commerce as defined in 9 U.S.C. Section 1 is fairly broad. It may also fall under that as well, alternatively or additionally. But we think this is certainly a maritime contract governed by Federal maritime law. Well, maybe you can address their reliance, or your opponent's reliance, rather, on the… The Bremen? Bremen, I guess, versus Apatow? Yes, Your Honor. Because that case does say, at least with respect to form selection clauses, that you would look to state law to see if state law… To see if application of the form selection clause would be unreasonable, right? And one of the ways it would be unreasonable is if it violated some strong public policy of the form state. So put aside the question whether the Montana statute is preempted for a second, because that's a whole separate question. But why aren't they right that under the Bremen you get to state law? Sure. Thank you for asking that question, Your Honor. The reason, I think, that Galilee LLC has been unable to find a case where this tension between Federal maritime law and state law is resolved in the context of arbitration agreements is that if we step back to the origins of Bremen, Bremen, 1972 Supreme Court case, certainly has been applied beyond the maritime context, because it's a Supreme Court case. But Bremen involved the question of an international agreement. So we had a U.S. corporation and a German corporation and a London High Court provision. So Bremen's about venue. It doesn't go all the way to arbitration agreements, but it was later extended. The idea there, I think, has more to do with comedy. There's a quote in Bremen that sort of sums up what that case is about. And if I could find it quickly, I would read it to you. But the Supreme Court stated there, we cannot have trade and commerce in world markets and international waters exclusively on our terms governed by our laws and resolved by our courts. So there the Supreme Court was considering the issue of U.S. federal maritime law versus the law of other nations. In essence, we have jurisdictions that are on an equal footing, so to speak. The Bremen Supreme Court case has been extended to resolving disputes between the law of one state versus the law of another state. So that is probably also, I think it is, an appropriate application of Bremen. When we're talking about federal maritime law, federal maritime law and state law are not, or at least not necessarily, on an equal footing. And so I think that's why we're not seeing the type of analysis that Galilea LLC is asking the court to perform here in any past cases. I think that this is sort of a, I can't represent to the court that it's novel because I know that Bremen has been cited more than 4,500 times. I can't claim to know whether there is a case that does this. But if there is, I'm not aware of it. And Galilea LLC is also not aware of it, as Mr. Gleason stated a few minutes ago. So I think understanding the origin of Bremen and the problem it was trying to address is somewhat helpful when we're talking about the maritime context and when we have this strong, I think, federal policy, as Judge Berzon mentioned, of having arbitration agreements enforced in the maritime context. So it's specifically called out in the Federal Arbitration Act. I think there really is a strong federal policy that needs to be uniformly enforced rather than engaging in an analysis of state law. And here, I hope I'm not belaboring the point, but the district court correctly found that there is virtually no connection to Montana. The Kettlers. Does that matter? I mean, is your ultimate point that even if we go to the sort of balance of policy strengths point that Montana would not have a strong public policy with regard to this particular agreement because it's peripheral connection to Montana? Or what? What's exactly the relevance of that? Montana's the forum. The people are from Montana. Now, do we then go, if we went to a Bremen analysis, would it nonetheless include the fact that maritime, there is at least a strong, one could argue a strong policy in maritime law in enforcing arbitration agreements and that Montana doesn't have much interest in this issue, in this particular contract because its connection is peripheral, so therefore we're not going to take its policy very strongly? Is that the point of it? I'll try to articulate it, Your Honor. I think so. I think that when reference is made to the forum state under the Bremen test, again, I think it was a comparison between sort of equal jurisdictions, jurisdictions on equal footing. And I think that when you're talking about looking at Montana law, there's a certain amount of fortuity in the fact that this case is in Montana. We did attempt maybe a procedural issue that was raised by Galileo, but we did attempt to make the point that maybe the venue is proper under 1391B, but there's a strong case that either 28 U.S.C. 1404A or the doctrine of nonconvenience would properly be applied to transfer the case to the Southern District of New York. And why is that? Because that's the place where the arbitration was supposed to take place. And, you know, when you agree to a choice of law provision in a maritime agreement, and probably generally, you are not heard to complain later that that's an inconvenient forum when you conduct the analysis under 1404A. The district court expressly stated that it was not considering that request that we made. So it's not the way that it was resolved. I see that my time has expired, Your Honors. If there are no further questions. Thank you. Give me a couple minutes. Your Honors, I just want to make one point specifically regarding 9 U.S.C. Section 2, the Federal Arbitration Act. Yes, that statute does say that arbitration agreements in maritime transactions are enforceable as they are in other kinds of transactions. But just like they are, just as in other kinds of transactions, that is a law of general applicability that does not specifically relate to insurance. As a result, I think that the McCarran-Ferguson Act, at least in the context of insurance, saves the Montana State law from preemption by the Federal Arbitration Act. And I don't think it makes a difference that the Federal Arbitration Act specifically calls out maritime transactions. It's the completion of the Maritime Ferguson Act before you decide whether there is maritime law that applies. In other words, this is a somewhat different context with regards to the McCarran-Ferguson Act because it's all maritime law and the state law is only being incorporated by reference. And therefore, if there is maritime law that applies before you get to the state law or before you get to the Maritime McCarran-Ferguson Act, it seems to me, then you never get to the McCarran-Ferguson Act because we're not going to state. There's no state. There's no state that's involved. It's all maritime law. Except that the Supreme Court has said in Bremen v. Zapata that you have to consider the public policy of the forum state, which every district court to have considered the issue has considered the forum state. But that's a choice of law question. The way I'm looking at it, there's not even, I mean, that has to do with the enforceability of the choice of law, but here the choice of law doesn't, I'm not even sure it matters. I mean, I don't mean that. What I mean is the provision in the contract with regard to the fact that maritime law applies. I mean, even if you didn't enforce that maritime law, it would still apply. I believe that's correct. And maritime law would tell you that you have to respect the public policy of the forum state and that it would be unreasonable to ask a forum state to enforce a clause that would violate a strong public policy. I see. Okay. Thank you. All right. Thank you very much. Interesting. Thank you both for your arguments in an interesting, complicated case. Galilee versus AGCS, maritime insurance company is submitted.
judges: Berzon, Watford, Owens